### THE DAUNTLESS.

(Circuit Court of Appeals, Fourth Circuit. May 3, 1910.)

#### No. 954.

SHIPPING (§ 81*)—LIABILITY OF VESSEL FOR TORTS—NEGLIGENT MANAGEMENT —CONTRIBUTORY FAULT.

A barge was lying at the head of a slip, and her stern line was cast off from the pier in order to allow the bow of respondent tug to come between her and the pier to reach a coal chute, the line being made fast to one of the forward bitts of the tug to prevent the stern of the barge from drifting across the slip. After the tug had coaled, she signaled for the casting off of her lines, and, swinging her stern outward to avoid a tug behind her, backed out. She failed to cast off the line from the barge, and no one of her crew was on the part of the vessel to observe the fact. Libelant, who was master of the barge, while attempting to cast off the line, was caught by a part of it which was lying in disorder on his deck, dragged overboard, and injured. *Held*, that it was the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

duty of the tug under the circumstances to exercise care and give attention to the barge, and her failure to do so was negligence which rendered her liable for libelant's injury. *Held,* further, that libelant was also negligent in failing to keep the line coiled in proper shape, and was not entitled to recover full damages.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 81.*]

Cross-Appeals from the District Court of the United States for the District of Maryland.

Suit in admiralty by Absalom Higbee against the tug Dauntless, the P. Dougherty Company, claimant. Decree for libelant, and both parties appeal. Affirmed.

W. L. Williams (Arthur D. Foster, on the brief), for the P. Dougherty Company.

Willard M. Harris and George T. Mister (Beverly W. Mister, on the brief), for libelant.

Before GOFF and PRITCHARD, Circuit Judges, and DAYTON, District Judge.

GOFF, Circuit Judge. The libel was filed in the court below by Absalom Higbee, master of the barge Smoot, against the steam tug Dauntless, in a cause of personal damage. The P. Dougherty Company of Baltimore county, owner of the steam tug, intervened, answered, and defended. The court below found in favor of the libelant and awarded him damages in the sum of $3,000, against the Dauntless, a larger sum not being allowed as he was found guilty of fault and negligence in connection with the accident. There were cross-appeals, the libelant contending that the court erred in finding him guilty of negligence, and also in not finding him entitled to greater damages; the claimant and owner insisting that it was error to find the steam tug at fault. Some of the witnesses were examined in open court, and some of them had their depositions duly taken and subsequently read to the court. As the case is disclosed by the record, the undisputed facts are in substance as follows: Libelant's barge, the Smoot, chartered to the Southern Transportation Company, loaded with a cargo of coal, was lying at the head of the slip, to the north of the pier operated by the Baker-Whitely Coal Company, at Canton, near the city of Baltimore. She had been ordered to leave the slip by 7 o'clock on Monday morning, March 23, 1908. She was 149 feet long, with 23 feet beam. About 9 o'clock of that morning the steam tug Dauntless, intending to take on bunker coal, entered said slip; the barge still being there. In order to enable the Dauntless to reach the coal chute, the stern line of the barge was thrown off from the pier, and the bow of the tug was run in between the barge and the pier. Then, so as to keep the stern of the barge from drifting to the other side of the slip, a small line was thrown from the barge and made fast to the forward port bitts of the tug, after which that vessel, having been fastened to the pier, proceeded to coal. The Dauntless, having finished her coaling, blew signals directing her lines to be cast off, orders to that effect having been given by her mate, who in the absence of the

captain was in charge. The Dauntless was a bay tug about 97 feet in length and 22 feet beam of 123 gross tons. At the time the Dauntless blew her whistle, and indicated that she was ready to back out, the Fortuna, a tug of the Southern Transportation Company, was coming up the dock for the purpose of taking the Smoot out. The signals of the Dauntless were given before the Fortuna got into the slip.

The testimony relating to what subsequently occurred was conflicting. Those on the barge testified that the line from it to the forward bitts of the Dauntless was not thrown off by any one on that vessel. The testimony of the mate, and others of the crew of the Dauntless, was to the effect that, when the lines were ordered cast off, the barge's line was thrown off from the Dauntless by a deck hand, after which that vessel proceeded ahead on her engines slowly, in order to work her stern out from the pier, and also so as to obviate collision with another tug—the Tormentor—which was then astern of the Dauntless. After the stern of the Dauntless had been so worked out from the pier, she proceeded to back out of the slip. Respondent offered evidence showing that it was a practice on the part of barges situated as was then the Smoot to cast a line to a tug moving out, so as in that way to be taken from the slip. The libelant denied that he or any one on the barge had refastened the line to the bitts of the Dauntless. A witness on another barge testified that, after the Dauntless had blown signals to cast off, he saw the captain of the Smoot attempting to throw a line over the bitts of the Dauntless. There was testimony tending to show that the line running from the bitts of the Dauntless, attached to the cleat on the starboard quarter of the Smoot, was lying loose and disordered on the deck of the Smoot. The libelant offered testimony showing that the loose end of said line was made fast to the barge's cleat by a half dozen turns, and that the residue of it was carefully coiled up on the deck, forward of the cleat. When the Dauntless backed out, and the Fortuna approached, the captain of the Smoot attempted to cast off this line, he standing on the deck where this rope was then so used and lying, but he failed in his efforts to do so, and the tug having gained sternway, the line commenced to run out, when his leg was caught in the bight, and he was dragged overboard, pulled through the water, and drawn up the side of the Dauntless. He was severely injured, and suffered the loss of his foot.

The testimony is most conflicting, and we find it useless to attempt to explain or harmonize the same. In ascertaining the truth and finding the facts, the conceded location of the vessels and the movements thereof necessary to bring about the changes intended will materially aid in the proper solution of the questions we are to answer. When the Dauntless started to move out, she then having her bow between the stern of the Smoot and the pier, and the line from the Smoot being still fast to the bitts of the Dauntless, the Fortuna close to and intending to enter the slip, and the tug Tormentor lying astern of the Dauntless, the situation was such as to require careful management from all of those in charge of the navigation of those vessels. At that time of the crew of the Dauntless there were seven on board, but not one of them was on her port side, from which only the situation on the Smoot could have been observed, which vessel had had a line fastened

to the port bitts of the Dauntless ever since the latter reached the pier. It is quite evident that the Dauntless started astern very soon after blowing her whistle, and without having thrown off the line that held the Smoot to her. In addition to this, there was no one in the pilot house, or on the bow of the Dauntless, which under the circumstances we have referred to was negligence. A man in the pilot house, or on the bow, would have seen the danger, and have given the signal that would easily have obviated the accident. He would have heard the cries of danger and distress coming from the Fortuna, would have seen the man overboard, and could have stopped the Dauntless almost instantly, for she had gained but little sternway.

We are not impressed with the testimony of those on the Dauntless who claim that the line from the Smoot to the Dauntless had been cast off by a deck hand of that tug, after she had given the signal she was going to "back out." This claim, as well as the insistence of the respondent that the master of the barge, after he had been cast off, for some purpose of his own, and in some way not shown, again made his line fast to the tug, is intrinsically weak, is flatly contradicted, is unreasonable, contrary to the probabilities, and unworthy of belief. The Smoot was where she had a right to be, and she had the right to demand and receive from the Dauntless the care, attention, and consideration that all vessels similarly situated should have from vessels alongside of which they may chance to be. That she was not so treated is beyond question, that the Dauntless neglected to give her the attention and the treatment required by good seamanship is plainly apparent from the record before us, and that she is liable to the libelant we have no doubt.

While the tug was negligent, was she solely responsible for the accident that followed? We are compelled by the facts clearly shown to answer this question in the negative. The libelant was not free from fault, yet still under the circumstances, having in view the negligence of the tug, and the equitable spirit of the admiralty rule applicable in such cases, he is nevertheless entitled to damages. He was injured when endeavoring to extricate himself from a dangerous position, caused by the negligence of the Dauntless and his own carelessness in allowing the disordered condition of the line by which the barge was fastened to the tug. This rope was about 30 fathoms long, from 20 to 30 feet only of which were used in making fast to the tug. It was not coiled as it should have been, but much of it was loose and scattered over the deck. He knew the Dauntless was making ready to back out, and that, unless the line was cast off, there would most likely be a strain upon it. He may have expected that the Dauntless would throw off his line, or may have believed that he would have ample time in which to do so, but still that did not obviate the duty that was his, to have his own deck in proper condition, "his own house in order." When the emergency was upon him, and he endeavored to cast off his line, he realized and suffered from the carelessness to which he had contributed, for the bight in which he was caught was from the rope scattered and disarranged over the deck of his barge.

We find that the decree appealed from properly imposes damages on the Dauntless because of its negligence, and that it justly recognizes

the fault of the libelant. The assignments of error on the appeals mentioned are without merit.

Affirmed.